## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J. PATRICK LYONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-870 (RMC) |
| ) | |
| BART GORDON, et al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MOTION TO DISMISS

Pro se Plaintiff J. Patrick Lyons is seeking review of a decision by the Committee on
House Administration of the U.S. House of Representatives that was adverse to his efforts to
have Defendant Bart Gordon removed from his post as a duly elected member of the House for
the 109th Congress. Plaintiff vaguely identifies several unsupported theories arising out of
constitutional language in an attempt to validate his Complaint, including the Incompatible
Offices Clause and the 20th Amendment, which clarifies dates of congressional successorship. In
addition to Representative Gordon, Plaintiff has also named as defendants Robert W. Ney,
Chairman of the Committee, Juanita Millender-McDonald, Ranking Member of the Committee,
and Mathew S. Petersen, Counsel for the Committee, alleging various unfounded charges in an
effort to undermine the Committee's authority. Although the United States is also a named
defendant, the Complaint does not include any claims against it.

Plaintiff's Complaint should be dismissed under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court lacks subject matter jurisdiction over this case, and the Complaint fails to state a claim upon which relief can be granted.

A memorandum of points and authorities and a proposed order are attached for the Court's consideration.

Dated: August 1, 2005.

Respectfully submitted,


/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


/s/_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


/s/_____
JANE M. LYONS, D.C. BAR # 451737
Assistant United States Attorney
Civil Division
555 4th Street, N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| J. PATRICK LYONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-870 (RMC) |
| | ) | |
| BART GORDON, <u>et</u> <u>al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**<u>AND IN OPPOSITION TO PLAINTIFF'S MISCELLANEOUS MOTIONS</u>**

<u>Pro se</u> Plaintiff J. Patrick Lyons seeks to have The Honorable Bart Gordon removed from his post as a duly elected member of the House for the 109th Congress, and to assume his position as the U.S. Representative of Tennessee's Sixth Congressional district.  In his Complaint, Plaintiff vaguely identifies several unsupported theories arising out of constitutional language in an attempt to validate his Complaint, including the Incompatible Offices Clause and the 20th Amendment, which clarify the dates of congressional successorship.  Earlier, plaintiff raised these same arguments in an administrative election contest filed with the Committee on House Administration of the House of Representatives ("Committee") and denied by the Committee on July 15, 2003.  <u>See</u> Complaint, Exhibit 1.  In addition to Representative Gordon, Plaintiff has also named two members and a staff member of the Committee as defendants:  Robert W. Ney, Chairman of the Committee, Juanita Millender-McDonald, Ranking Member, and Mathew S. Petersen, Counsel.  Plaintiff alleges various unfounded charges in an effort to undermine the

Committee's authority. Although the United States of America is also a named defendant, Plaintiff identifies no claims against it. Because there is no legal basis for claims against any of the defendants, no waiver of sovereign immunity, and no judicial review of the election contest, this case should be dismissed.

## BACKGROUND

Pro se Plaintiff J. Patrick Lyons was an independent candidate for the United States House of Representatives for the 6th congressional district of Tennessee in the November 2, 2004 election. See Compl. at 5. The winner of that contest was the Democratic candidate, Bart J. Gordon (167,448 votes – 64.7%), who was also the incumbent. Id. The Republican candidate, Nick Demas, finished in second place (87,523 votes – 33.8%), also well ahead of Mr. Lyons, who finished in a distant third place with 3,869 votes (1.5%). Id. Mr. Lyons filed a lawsuit in Tennessee seeking to have Representative Gordon's name removed from the ballot prior to the election, but the courts rejected his challenge. See Lyons v. Thompson, No. 02-1004 (M.D. Tenn. May 30, 2003) (order dismissing claim with prejudice for lack of subject matter jurisdiction).[1]

The Tennessee Secretary of State certified the election results on December 7, 2004 and declared Mr. Gordon the winner. Id. Rep. Gordon has been the U.S. Representative for Tennessee's 6th district since the election. In this action, Plaintiff is once again attempting to disqualify Rep. Gordon through essentially the same lawsuit he filed in Tennessee in connection

---

[1] Mr. Lyons filed similar lawsuits in both Tennessee and this Court in connection with the earlier election of Representative Van Hilleary of the Fourth Congressional district. Lyons v. Van Hilleary, No. 96-2777 (D.D.C. Apr. 14, 1997) (order dismissing claims); Lyons v. Van Hilleary, No. 96-2777 (D.D.C. Mar. 31, 1997) (order dismissing claims for lack of subject matter jurisdiction); Lyons v. Van Hilleary, No. 4:95-CV-46 (E.D. Tenn. Jun. 21, 1995), aff'd 81 F.3d 160, WL 135003 (6th Cir. 1996) (dismissing claims for lack of subject matter jurisdiction). These decisions are attached as Exhibit E.

with the 2002 election.  Before bringing his current Complaint before this Court, Mr. Lyons filed

a contested election claim with the House of Representatives pursuant to the Federal Contested

Elections Act ("FCEA"), 2 U.S.C.A. §§ 381-96 (2005).  See Complaint, Exhibit 1; Notice of

Contest, H. Rep. No. 109-57 (April 27, 2005) (attached as Exhibit A).[2]  The Committee dismissed

his claim for failing to "allege irregularities, fraud, or wrongdoing with respect to the conduct of

an election that, if proven, would likely overturn the original election outcome" as it requires

under the FCEA.  H. Rep. No. 109-57, at 4 (April 27, 2005).  Plaintiff now seeks to have this

Court review the final decision of the House.  To that end, Mr. Lyons filed has filed a complaint

[Docket Entry No. 1], an application for a three-judge panel [Docket. Entry No. 2], a notice to the

Court concerning a misprision of felony [Docket Entry No. 6], and a motion for summary

judgement [Docket Entry No. 7].

Although his Complaint is far from clear, Mr. Lyons appears to base his claim that Rep.

Gordon is disqualified from serving as a member of Congress on his own (mis)interpretations of

several constitutional clauses.  First, Mr. Lyons urges through wordplay that the Twentieth

Amendment to the United States Constitution forbids the reelection of any incumbent member of

Congress.  See Compl. at 6.  He asserts that a linguistic distinction between "Representatives" and

"their successors," when interpreted literally, requires that members of Congress officially resign

their positions before seeking reelection.  Id.  The Twentieth Amendment provides:

---

[2]  Where a defendant attaches certain exhibits solely to demonstrate that the Court lacks
jurisdiction over the portion of plaintiff's complaint pertaining to it, those attached documents do
not warrant treating the motion as one for summary judgment.  See, e.g., Land v. Dollar, 330
U.S. 731, 735 n. 4 (1947); Herbert v. National Academy of Sciences, 974 F.2d 192, 197-98 (D.C.
Cir. 1992); Bonterra America, Inc. v. Bestmann, 907 F. Supp. 4, 5 n.1 (D.D.C. 1995).

3

The terms of the President and Vice President shall end at noon on the 20th day of January, and the terms of the Senators and Representatives at noon on the 3d day of January, of the years in which such terms would have ended if this article had not been ratified; and the terms of <u>their successors</u> shall then begin.

U.S. Const. amend. XX, § 1 (emphasis added).

Second, Plaintiff argues that U.S. Const. art. I, § 6, cl. 2, which provides:

No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States...and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office

also forbids the reelection of any incumbent member of Congress. <u>See</u> Compl. at 7. Mr. Lyons's theory seems to be that Members of Congress hold an "Office of the United States" and are therefore barred from holding that same office in a subsequent term. <u>Id.</u> He would again require that U.S. Representatives formally resign before seeking reelection.

Third, Mr. Lyons claims that Rep. Gordon is barred under the 14th Amendment from becoming a Member of Congress because he has committed an insurrection against the United States. <u>See</u> Compl. at 9; U.S. Const. amend. XIV, § 3 ("No person shall be a Senator or Representative...who, having previously taken an oath, as a member of Congress...or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same"). Mr. Lyons argues that because Rep. Gordon is occupying a seat in Congress in contravention to Mr. Lyons's interpretations of the Constitution, Rep. Gordon is also, as a matter of course, committing an insurrection or rebellion against the Constitution as Plaintiff reads it. <u>Id.</u>

4

These claims are patently frivolous.  By his own admission, Plaintiff's theories would disqualify a large majority of Members of Congress.  Compl. at 45.  Additionally, this Court lacks subject matter jurisdiction over these claims.  The Complaint must be dismissed.

## ARGUMENT

### I.   Standard of Review for Dismissal

"In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  Thompson v. Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted).  "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) may be granted if it is beyond doubt that the plaintiff can demonstrate no set of facts that support a claim entitling him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  The Court is to treat the complaint's factual allegations as true, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), and must grant Plaintiff "the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979).  While parties proceeding without legal representation are entitled to have their pleadings liberally construed, Hughes v. Rowe, 449 U.S. 5, 9-10 (1980) (per curiam), they are not entitled to pursue actions without legal merit.  See Jones v. Community Redevelopment Agency, 733 F.2d 646, 649

(9th Cir. 1984) (dismissing pro se plaintiff's proposed second amended complaint because its conclusory allegations were unsupported by any facts).  In particular, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions."  National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## II.    Collateral Estoppel Bars Adjudication of this Claim

Plaintiff's claims against all defendants must be dismissed because the issue of subject matter jurisdiction has already been litigated in a case to which Plaintiff was a party.  "Generally, collateral estoppel, or issue preclusion, bars relitigation of issues that actually and fairly have been decided in a prior action." Staffer v. Bouchard Transp. Co., Inc., 878 F.2d 638, 644 (2d Cir. 1989); Bulloch v. Pearson, 768 F.2d 1191, 1192 (10th Cir. 1985) ("Issue preclusion refers to the principle that 'a litigant in one lawsuit may not, in a later lawsuit, assert the contrary of issues actually decided in and necessary to the judgment of the first suit.'").  The requirements of issue preclusion are that the same issue have been actually litigated and necessarily decided in a prior action, and that the party against whom preclusion is asserted was a party to the prior action. Garza v. Henderson, 779 F.2d 390, 393 (7th Cir. 1985).

Collateral estoppel applies to findings of jurisdiction.  Kasap v. Folger Nolan Fleming & Douglas, Inc., 166 F.3d 1243, 1248 (D.C. Cir. 1999) ("In fact, under principles of issue preclusion, even a case dismissed *without* prejudice has preclusive effect on the jurisdictional issue litigated.") (emphasis supplied); Dozier v. Ford Motor Co., 702 F.2d 1189, 1198 (D.C. Cir. 1983) (Scalia, J.).  Thus, "the party alleging jurisdiction in a second action will be precluded from

6

relitigating any issue of fact or law determined against it in the first action which it had full opportunity to litigate." GAF Corp. v. United States, 818 F.2d 901, 913 (D.C. Cir. 1987). The only exception to collateral estoppel with respect to jurisdiction is where the jurisdictional shortcoming is cured by a change in circumstances. Dozier, 702 F.2d at 1198 ("[W]here a jurisdictional defect is cured or otherwise loses its controlling force, a second action may be brought under the same jurisdiction.").

        Subject matter jurisdiction cannot exist over this case because the jurisdiction issue has already been litigated and finally determined adversely to Plaintiff. Mr. Lyons has previously raised the same issues he is raising here in an action filed in Tennessee challenging the eligibility of Congressmen Gordon for the 2002 election. See Exhibit B (Complaint filed in Middle District of Tennessee in No. 3:02-1004). That action was dismissed for lack of subject matter jurisdiction. See Exhibit C (Order in Lyons v. Thompson, No. 3:02-1004 (M.D. Tenn. May 30, 2003)). In addition, Plaintiff had lost at least some of the same issues in his previous bid to unseat a different Member of Tennessee's Congressional delegation. See Lyons v. Sunquist, No. 01-6578, 41 Fed. Appx. 832 (6th Cir. Aug. 14, 2002) (unpublished order dismissing claim for lack of subject matter jurisdiction) (attached as Exhibit D). The Tennessee federal court recently held that it was prevented from considering the case because collateral estoppel applied from these earlier decisions. Lyons v. Thompson, No. 02-1004 (M.D. Tenn. May 30, 2003) (Exhibit C).

        Specifically, the federal court in Tennessee found that subject matter jurisdiction had already been considered and found not to exist for the federal courts in one of Mr. Lyons's previous claims. Id. (citing Lyons v. Sunquist, No. 01-6578 (6th Cir. Aug. 14, 2002)). In Lyons v. Sunquist, the Court of Appeals for the Sixth Circuit explained that Mr. Lyons's constitutional

challenges under U.S. Const. art. I, § 6, cl. 2 and U.S. Const. amend. XIV, § 3 both fell within the category of challenges to the "qualifications" of a Member of the House, and jurisdiction was therefore vested exclusively with the House of Representatives under U.S. Const. art. I, § 5 ("Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members").  The Lyons v. Thompson court, in dismissing Mr. Lyons's case for want of subject matter jurisdiction, also necessarily held that his claim under the U.S. Const. amend. XX, § 1 disability clause for insurrection or rebellion is classified as a qualification challenge and therefore reserved for the House to decide.  See Complaint at 2, Lyons v. Thompson, No. 02-1004 (M.D. Tenn. May 30, 2003); see also Powell v. McCormack, 395 U.S. 486, 521 (1969) ("It has been argued that each of these provisions, as well as the Guarantee Clause of Article IV and the oath requirement of Art. VI, cl. 3, is no less a 'qualification' within the meaning of Art. I, § 5, than those set forth in Art. I, § 2.").

Mr. Lyons's previous challenge to the candidacy of Rep. Van Hilleary of the Fourth Congressional District of Tennessee was also dismissed after the Sixth Circuit decided that federal courts did not have subject matter jurisdiction over his claims.  Lyons v. Van Hilleary, 81 F.3d 160, 1996 WL 135003 (6th Cir. 1996) (table).[3]  In addition to holding that all claims under the FCEA are necessarily within the jurisdictional purview of Congress, the court stated that "[t]he Constitution and applicable federal law clearly vest authority over federal election contests,

---

[3]  Plaintiff also filed an action in this Court after he lost his challenge in federal court in Tennessee involving Representative Van Hilleary.  That case was dismissed by the Honorable Thomas Penfield Jackson on March 31, 1997.  Plaintiff's appeal to the United States Court of Appeals for the Federal Circuit was subsequently denied for lack of prosecution.  Decisions from the Eastern District of Tennessee as well as courts located in the District of Columbia involving the Van Hilleary litigation are attached hereto as Exhibit E.

regardless of form or subject matter, in the House of Representatives." Id. at 1.  This suggests that regardless of the particular statutory or constitutional derivation of Mr. Lyons's complaint, if he is seeking to challenge the results of a federal election, his only forum is the House.  And unlike in Lyons v. Van Hilleary where Mr. Lyons denied filing an "election contest," he has clearly defined his present attack in those terms.  See Notice of Contest, H. Rep. 109-57 (2005) (declaring his challenge a "contest to the election of Bart Gordon" under the Federal Contested Election Act).

Because Mr. Lyons already had a chance to fully and fairly litigate the jurisdiction issue before several courts, he is estopped under the doctrine of issue preclusion from asserting jurisdiction in the present case.  In addition, Mr. Lyons alleges no factual circumstances that have changed in the interim that could cure jurisdiction because the previous dismissals were decided as matters of law and did not rely on the circumstantial positions of the parties or the facts of the cases.  See Lyons v. Thompson, No. 02-1004 (M.D. Tenn. Order filed May 30, 2003).

For the above reasons, Plaintiff's current claim must be dismissed because collateral estoppel prevents this Court from considering the jurisdiction issue where previous courts have held that jurisdiction does not exist.

### III.    The Court Lacks Subject Matter Jurisdiction Over this Case for Additional Reasons

Even if this case were not barred by issue and claim preclusion, this Complaint would have to be dismissed for all defendants because the Court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).

_____**A.**   **The United States House of Representatives Has Exclusive Jurisdiction Over this Matter Under the Constitution**

_____In cases of contested elections such as this one, the Constitution provides that "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members." U.S. Const. art. I, § 5, cl. 1.  This power flows from the unanimous practice in America at the time of the Constitution's ratification "for legislatures to be the final judges of the elections and qualifications of their members." I. J. Story, Commentaries on the Constitution, § 833 at 605 (5th ed. 1905).

The Supreme Court and lower courts of appeals have consistently recognized this authority and respected it as judicially unreviewable.

> Generally the Senate is a legislative body, exercising in connection with the House only the power to make laws.  But it has had conferred upon it by the Constitution certain powers which are not legislative but judicial in character.  Among these is the power to judge of the elections, returns and qualifications of its own members...to render a judgement which is beyond the authority of any tribunal to review.

Barry v. United States ex. rel. Cunningham, 279 U.S. 597, 613 (1929) (emphasis added); see also, e.g., Roudebush v. Hartke, 405 U.S. 15 (1972) ("Which candidate is entitled to be seated in the Senate is, to be sure, a nonjusticiable political question–a question that would not have been the business of this Court even before the Senate acted."); Reed v. County Commissioners, 277 U.S. 376, 388 (1928) ("[The Senate] is fully empowered, and may determine such matters without the aid of the House of Representatives or the executive or judicial department."); Morgan v. U.S., 801 F.2d 445 (D.C. Cir. 1986) (declining for lack of jurisdiction under Elections Clause to review House decision on which of two candidates prevailed in an election); McIntyre v. Fallahay, 766 F.2d 1078, 1081 (7th Cir. 1985) ("The House is not only the "Judge" but also final arbiter.  Its

decisions about which ballots count, and who won, are not reviewable in any court."); <u>Manion v. Holzman</u>, 379 F.2d 843, 845 (7th Cir. 1967) ("The constitutionally provided judgement of [the] election resided in the House of Representatives.").

_____Here, Mr. Lyons is disputing an election result and attempting to challenge Defendant Gordon's qualifications for membership in the House of Representatives.  Compl. at 2.  Under the Constitution, the sole arbiter of his case is the United States House of Representatives.  <u>See</u> U.S. Const. art. I, § 5, cl. 1; <u>Roudebush</u>, 405 U.S. 15.  The Committee on House Administration has already considered this matter and issued a final order dismissing Mr. Lyons's claim.  <u>See</u> H.R. Res. 318, 108th Cong. (2003); H.R. Rep. No. 108-208, at 4 (2003).  As such, this Court is denied jurisdiction over Plaintiff's claim, and his case must be dismissed.

_____**B.      Sovereign Immunity Prevents Suit Against All Defendants Except Through Application of The Federal Contested Elections Act**

As a general rule, the United States is immune from suit unless it waives immunity. <u>Overton v. United States</u>, 925 F.2d 1282, 1284 (10th Cir. 1991) ("It is well-settled that the United States retains its sovereign immunity from suit unless it has expressly waived such immunity.") (citing <u>National Commodity & Barter Ass'n v. Gibbs</u>, 886 F.2d 1240, 1245-46 (10th Cir.1989)); <u>see also</u> <u>Keener v. Congress of the United States</u>, 467 F.2d 952, 953 (5th Cir. 1972) (sovereign immunity applies to Congress).  Sovereign immunity extends to agency officials named in their official capacities.  <u>State of Hawaii v. Gordon</u>, 373 U.S. 57, 58 (1963) (stating that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter); <u>Atkinson v. O'Neill</u>, 867 F.2d 589, 590 (10th Cir. 1989).  The test for determining whether the sovereign is implicated in a suit that names government agents is effect-based.  <u>See</u> <u>Dugan v.</u>

Rank, 372 U.S. 609, 620 (1963) ("The general rule is that a suit is against the sovereign if 'the

judgment sought would expend itself on the public treasury or domain, or interfere with the public

administration. . . or if the effect of the judgment would be 'to restrain the Government from

acting, or to compel it to act.'" (internal citation omitted); see also Land v. Dollar, 330 U.S. 731,

738 (1947).

Plaintiff has named the United States as a defendant, but the United States retains full

sovereign immunity except where it has been waived.  In addition, the other named defendants are

all Officers of the United States named in their official capacities as members of the United States

House of Representatives.  Although Plaintiff does not appear to seek any form of monetary relief,

his suit, if successful, would compel the government to act because he is essentially seeking to

oust a congressman that the U.S. Government has already held to be a duly-elected member.  The

effect of a successful suit would implicate the national legislative process and the domain of

national government in the highest degree.  Accordingly, sovereign immunity clearly protects the

United States and the other named defendants from suit unless there is an express waiver.

Congress waived the United States' immunity from suit with regards to contested elections

when it passed the Federal Contested Elections Act.  See  2 U.S.C. §§ 381, et seq. ("FCEA").  The

FCEA provides the mechanism for an unsuccessful candidate to "claim[] a right to" office.  2

U.S.C. § 382.  But, the FCEA also vests jurisdiction over such suits exclusively in the House of

Representatives.  2 U.S.C. § 392(a) ("Contested election cases shall be heard by the [House

Oversight] committee.").  This is an internal House procedure, and no relief is available from the

courts because the limited waiver of sovereign immunity does not provide for judicial review of

any kind.  Nor can jurisdiction over FCEA claims be expanded to include the federal courts.  Orff

v. United States, ___ U.S. ___, 125 S. Ct. 2606, 2607 (2005) ("A waiver of sovereign immunity

must be strictly construed in favor of the sovereign.").  Because the FCEA expressly confers

jurisdiction only upon the House of Representatives, this Court may not expand the scope of the

immunity waiver by asserting jurisdiction.

As a byproduct of the jurisdictional limitations, the FCEA does not allow appeals of

House determinations.  Morgan v. United States, 801 F.2d 445, 451 (D.C. Cir. 1986) ("[O]nce the

outcome of the contest has been conclusively adjudged by the House there is no meaningful relief

we can provide, and the dispute is therefore moot.") (citing McIntyre v. Fallahay, 766 F.2d 1078,

1082 (7th Cir. 1985)).  Plaintiff has failed to identify any other waiver of sovereign immunity.

Accordingly, this case should be dismissed.

**C.    Plaintiff Lacks Standing to Bring Suit**

In the alternative, this Court must dismiss Plaintiff's claims against all defendants because

he lacks standing to bring suit.

As a threshold matter, the Supreme Court "has always required that a litigant have

"standing" to challenge the action sought to be adjudicated." Valley Forge Christian College v.

Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982).  The burden

to prove standing is on the party seeking jurisdiction.  See generally FW/PBS, Inc. v. City of

Dallas, 493 U.S. 215 (1990).  The standing requirement derives from the Case or Controversy

clause; it is a blend of constitutional requirements and prudential considerations.  See Warth v.

Seldin, 422 U.S. 490, 498 (1975).  It encompasses two strands: "Article III standing, which

enforces the Constitution's case or controversy requirement...and prudential understanding, which

embodies "judicially self-imposed limits on the exercise of federal jurisdiction."" Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, (2004) (internal citation omitted).

In order to meet Article III standing--the first strand--the plaintiff must at a minimum "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38 (1976). Alternatively stated,

> First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized...and (b) "actual or imminent, not 'conjectural' or 'hypothetical....Second, there must be a causal connection between the injury and the conduct complained of-- the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not...th[e] result [of] the independent action of some third party not before the court....Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

Prudential standing–the second strand--encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interest protected by the law invoked." Allen v. Wright, 468 U.S. 737, 751 (1984). Prudential standing also restricts would-be litigants from bringing questions of abstract public significance before the courts. See Warth v. Seldin, 422 U.S. at 500.  Otherwise, such claims would convert the judicial process into no more than a vehicle for the vindication of the value interests of concerned bystanders." United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 687 (1973).

Plaintiff does not meet the Supreme Court's requirements for standing, and so his case must be dismissed. Mr. Lyons has not himself suffered any concrete, non-speculative injury as a result of Defendants' conduct because in order to be injured, Mr. Lyons would have to show that he was denied a congressional seat to which he was otherwise entitled. But, Mr. Lyons admits to finishing third in the election after receiving less than two (2) percent of the vote. Compl. at 5. His exclusion from the U.S. House of Representatives came because too few of the voters of Tennessee's 6th congressional district want Mr. Lyons to represent them. He therefore was in no way injured because he never had a valid claim to the seat. Additionally, because Mr. Lyons's alleged injury was not caused by Defendant, but by voters, he fails to satisfy standing requirements.

Even assuming that Defendant Gordon's candidacy injured Mr. Lyons in some way, he still does not meet the requirements of causation and likely redress. In addition to Defendant Gordon, there was a third candidate in the election, Nick Demas, who also received considerably more votes than Plaintiff. Id. Because Plaintiff was defeated by multiple election opponents, Mr. Gordon cannot be said to be the 'but for' cause of Mr. Lyons's exclusion. Finally, were this Court to hear Plaintiff's case, there is no chance that it could redress Plaintiff grievances because the relief sought is that he be instated as a member of the House of Representatives. Mr. Lyons cites no authority by which this Court, if it invalidated Rep. Gordon's election victory, could then install into national office the third-place finisher in an election. Such an action would be in flagrant violation of the constitutional principle that only the people of the several states--and not federal judges--may elect members of Congress. U.S. Const. art. I, § 2, cl. 1. Mr. Lyons has not been so elected.

15

Additionally, Plaintiff may not achieve standing merely by being an interested citizen. Prudential standing prohibits the adjudication of cases that are merely of abstract public significance or generalized grievances.  See United States v. SCRAP, 412 U.S. at 687 (1973).  "A plaintiff claiming only a generally available grievance about government, unconnected with a threatened concrete interest of his own, does not state an Article III case or controversy." Lujan, 504 U.S. at 556 (citing Fairchild v. Hughes, 258 U.S. 126, 129-30 (1922)); Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 120 (1979).

> **D.  The Speech or Debate Clause of the Constitution Protects Both the Congressional Defendants from Suit and the Decision of the Committee on House Administration from Review**

The Congressional defendants are immune from suit under the Speech or Debate Clause, which provides that "for any Speech or Debate in either House, [the Representatives and Senators] shall not be questioned in any other place."  U.S. Const., art. I, § 6, cl. 1.  The privilege was designed "[t]o prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary," Gravel v. United States, 408 U.S. 606, 617 (1972), and to "insure the independence of the legislature." United States v. Brewster, 408 U.S. 501, 508 (1972).  The Speech or Debate protection extends in scope broadly to cover the "sphere of legitimate legislative activity," Doe v. McMillan, 412 U.S. 306, 312-13 (1973); Gravel, 408 U.S. at 624, including suits requesting injunctive relief.  Eastland v. United States Servicemen's Fund, 421 U.S. 491 (1975).  'Legislative activity' has been interpreted to include "anything generally done in a session of the House by one of its members in relation to the business before it."  See Gravel, 408 U.S. at 624; Powell v. McCormack, 395 U.S. 486, 502 (1969).  The legislative sphere also includes activities that are

an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or <u>with respect to other matters which the Constitution places within the jurisdiction of either House</u>.

<u>Eastland</u>, 421 U.S. at 504 (quoting <u>Gravel</u>, 408 U.S. at 625) (emphasis added).  The Clause applies to congressional staff as well as to Members of Congress.  <u>Gravel</u>, 408 U.S. at 618. Where the Speech or Debate privilege attaches, it is absolute.  <u>Eastland</u>, 421 U.S. at 503.

_____This suit would also threaten the integrity of the legislative process, which is protected. <u>See</u> <u>U.S. v. Brewster</u>, 408 U.S. at 507.  This action challenges the actions of the Committee on House Administration and the individual defendants who are Members or staff of the Committee. The Committee has already debated and issued a ruling on Defendant's eligibility pursuant to its powers under the Elections Clause.  <u>See</u> U.S. Const. art. I, § 5, cl. 1.  Plaintiff is thus directly challenging the discussions and acts of the entire Committee and its individual Members, including Robert Ney, Chairman, Juanita Millender-McDonald, Ranking Member, and Matthew Petersen, who are all named defendants.  The Speech or Debate Clause particularly protects matters before committees which the Constitution places within the jurisdiction of either house, <u>see</u> <u>Eastland</u>, 421 U.S. at 504, and the Committee's decision clearly falls into this category.  <u>See</u> <u>supra</u>; U.S. Const. art. I, § 5, cl. 1.

For these reasons, the Complaint must be dismissed.

**IV.   The Complaint Also Fails To State a Claim Upon Which Relief Can Be Granted.**

_____The Complaint should also be dismissed for all defendants because it fails to state any claim upon which relief may be granted as required under Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  Each of Plaintiff's arguments are completely erroneous and fail to cite any

authority which might support them.

First, Mr. Lyons urges through wordplay that the 20th Amendment forbids the reelection of

any incumbent member of Congress.

> The terms of the President and Vice President shall end at noon on the 20th day of
> January, and the terms of the Senators and Representatives at noon on the 3d day
> of January, of the years in which such terms would have ended if this article had
> not been ratified; and the terms of <u>their successors</u> shall then begin.

U.S. Const. amend. XX, § 1 (emphasis added).  Plaintiff interprets 'successor' to exclude from

possibility that a congressman could be his own successor, and therefore concludes that no

incumbent Member of Congress is eligible for reelection.  This result is unsupported and

completely untenable.  There is no indication that in the drafting of the Amendment, its authors

had any intent to completely disrupt the centuries old tradition of incumbency, as Plaintiff would

have it.

Second, Mr. Lyons argues that U.S. Const. art. I, § 6, cl. 2,

> No Senator or Representative shall, during the Time for which he was elected, be
> appointed to any civil Office under the Authority of the United States...and no
> Person holding any Office under the United States, shall be a Member of either
> House during his Continuance in Office,

also forbids the reelection of any incumbent member of Congress.  Plaintiff's logic seems to be

that an incumbent Member of Congress who is reelected is in effect appointed to hold the seat that

he already holds, thus violating the Incompatible Offices Clause.  His interpretation would again

destroy the possibility of consecutive terms in representative government, which is an absurd

result.  Plaintiff makes his assertion without resort to any legal authority, and Defendants are

aware of none which would remotely support it.

Alternatively, Plaintiff argues that Rep. Gordon is ineligible to be a Member of Congress because he has not surrendered his license to practice law. The Incompatible Offices Clause applies when a Member of Congress simultaneously holds actual state office. For instance, when Congressman George Lilley simultaneously served as governor of the state of Connecticut, "there [was] an absolute inconsistency in the functions of the two offices." 6 Cannon's Precedents of the House of Representatives, § 65 (1936). Being a licensed attorney is simply not holding state office, despite Mr. Lyons's unsupported claim that licensed attorneys are "judicial officers." Cf. Local Rules of the United States District Court for the Eastern District of Tennessee, Employment Dispute Resolution Plan, Ch. 1, § 3(C) ("The term 'judicial officer' means a judge of the United States Court for the Eastern District of Tennessee appointed under Article III of the Constitution, or a United States magistrate judge."). Mr. Lyons's theory that the Incompatible Offices Clause applies when a Member of Congress is also a member of a state bar is unsupported by any authority of which we are aware.

Third, Mr. Lyons claims that Rep. Gordon is barred under the 14th Amendment from becoming a Member of Congress because he has committed an insurrection against the United States. See U.S. Const. amend. XIV, § 3 ("No person shall be a Senator or Representative...who, having previously taken an oath, as a member of Congress...or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same"). Plaintiff satisfies the first prong of the disability clause; Rep. Gordon is indeed a Member of Congress who has taken an oath to defend the Constitution of the United States. But, Plaintiff alleges no facts under which Rep. Gordon could remotely be said to have committed an insurrection. The insurrection language of the 14th amendment contemplates

19

actual, armed uprising against the United States, especially in the context of the Civil War.  See,

e.g., United States v. Powell, 65 N.C. 709 (1871) ("We are of opinion, gentlemen, that the word

'engage' implies, and was intended to imply, a voluntary effort to assist the Insurrection or

Rebell[i]on, and to bring it to a successful termination.").

       Plaintiff brings a litany of claims against the defendants that have no bearing on the

disposition of this case at all, except that they are intended by Mr. Lyons to serve as grounds for

'insurrection' within his interpretation of the 14th amendment and its statutory cousin,18 U.S.C.

§ 2383 ("Whoever incites, sets on foot, assists, or engages in any rebellion or insurrection against

the authority of the United States or the laws thereof, or gives aid or comfort thereto...shall be

incapable of holding any office under the United States.").  See Pl.'s Mem. of Points &

Authorities in Support of Motion for Summ. J. at 20-21 (accusing Rep. Gordon of embezzlement

under 18 U.S.C. § 641 for accepting his salary as a congressman); Id. at 22 (accusing Rep. Gordon

of 456 counts of bribery for accepting general campaign donations); Id. at 24-25 (accusing Rep.

Gordon of illegal solicitations under 18 U.S.C. § 602 for accepting his congressional salary); Id. at

28-31 (accusing Rep. Gordon, Rep. Ney, and Rep. Juanita Millender-McDonald of violating 18

U.S.C. § 431, which generally prohibits making contracts for personal benefit while acting on

behalf of the United States, for accepting their government salaries); Id. at 31-33 (accusing Rep.

Ney and Rep. John B. Larson (who is not a named defendant in this case) of violating the

prohibition on 'tricks' and 'schemes' in 18 U.S.C. § 1001 by conducting a voice vote dismissing

Plaintiff's claim); Id. at 38-39 (accusing Defendant Petersen of refusal to process Plaintiff's claim,

though without giving any supportive facts).  Even if any of these violations were meritorious –

which they are not –  they would have no bearing on the disposition of this case because they clearly would not rise to the level of armed insurrection as contemplated by the 14th Amendment.

Finally, Plaintiff appears to imply that the FCEA is unconstitutional on its face because he disagrees with Chairman Ney's interpretation of how the Act is to be administered.  See id. at 38. He holds this belief regardless of the fact that the FCEA gives full authority over its execution to the Houses of Congress.  See 2 U.S.C. § 382.  It is unclear how this argument would even help Plaintiff's case, since the FCEA is the waiver of immunity he is relying upon to contest his election.  His argument seems to be that Chairman Ney's interpretation unduly limits the scope of House consideration, and Plaintiff cites the broad authority given to the House under U.S. Const. art. I , § 5, cl. 1.  Thus, he concludes that, in exercising its constitutionally-granted discretion, the House is restricting itself in an unconstitutional way.  The claim is self-contradicting and without merit.

Plaintiff's outlandish claims are all untenable and based on interpretations of the Constitution not existent in any precedential authority.  They fail to state a claim for which relief can be granted, and so must be dismissed.

**V.      Plaintiff's Motion Concerning Misprision of Felony is of No Consequence**

Misprision of felony refers to a legal requirement that persons with knowledge of criminal wrongdoing come forward and report it.  Jenkins v. Anderson, 447 U.S. 231, 244 (1980) ("Although the term 'misprision of felony' now has an archaic ring, gross indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship.").  Plaintiff's motion is either an act of posturing or paranoia, as the current federal statute punishing misprision of felony, 18 U.S.C. § 4, is only rarely enforced, and enforced only in circumstances not present in

this case.  See Roberts v. United States, 445 U.S. 552, 557 (1980) ("It has been construed to require "both knowledge of a crime and some affirmative act of concealment or participation.") (quoting Branzburg v. Hayes, 408 U.S. 665, 696 (1972)); United States v. Farrar, 281 U.S. 624 (1930); Bratton v. United States, 73 F.2d 795 (10th Cir. 1934).[4]  The misprison of felony about which Plaintiff is presumably concerned is Representative Gordon's continued service in the United States House of Representatives as a result of the other supposed violations of law identified above.

        To the extent Plaintiff's motion could be construed as seeking immunity for himself from prosecution for misprison of a felony, it would be radically premature and outside of the Court's power to grant.  There is nothing to suggest that Plaintiff would meet the requirements of knowledge and active concealment even assuming the United States contemplated filing a charge against him.  To the extent Plaintiff is attempting to charge the named defendants with misprison of felony, he fails because such decisions are vested within the prosecutorial discretion of the United States Attorney for the District of Columbia and the Attorney General.  Accordingly, the Court should deny Plaintiff's motion relating to misprison of felony.[5]

---

   [4]  18 U.S.C. § 4 provides:
        Whoever, having knowledge of the actual commission of a felony
        cognizable by a court of the United States, conceals and does not as
        soon as possible make known the same to some judge or other
        person in civil or military authority under the United States, shall
        be fined under this title or imprisoned not more than three years, or
        both.

   [5]  Likewise Plaintiff's Motion to Report, which does not appear to have been separately docketed by the Clerk, is not a proper motion because it fails to ask the Court to take any action. As such, like the motion involving misprison of felony, the motion to report is of no consequence.

## VI.   Plaintiff's Application for a Three-Judge Court Should be Rejected as Unauthorized by Federal Law

Plaintiff's application for a three-judge court should be denied because federal law no longer contemplates that a three-judge panel be provided for claims of this type.

Three-judge panels are authorized in cases challenging apportionment and in other cases where a statute makes specific authorization.

> A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.

28 U.S.C. § 2284.  Plaintiff's claim clearly does not entail a challenge to the constitutionality of any apportionment scheme, so to be entitled to a three-judge panel, he must identify an act of Congress that otherwise specifies to make a panel available.  Plaintiff relies exclusively on 28 U.S.C. § 2282, which until 1976 provided that:

> an interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress on grounds of unconstitutionality should not be granted unless the application therefor has been heard and determined by a three-judge district court.

However, as Plaintiff notes, this provision was repealed in 1976, thereby removing the statutory basis for his application.  See 28 U.S.C. § 2282 (2005).

Plaintiff argues in the alternative that if 28 U.S.C. § 2282 no longer has effect, then 28 U.S.C. § 2284 is unconstitutional.  See Pl.'s Mem. of Points and Authorities in Support of Application for Three-Judge Court, at 5.  Although Mr. Lyons fails to explain his reasoning, it would seem that he must be asserting a constitutional right to a three-judge panel whenever he desires one.  Mr. Lyons, of course, cites no authority for this premise, and the very existence of 28 U.S.C. § 2284, authorizing in *some* cases a three-judge court, seems to defeat it.

Accordingly, Plaintiff's application for a three-judge panel should be denied.

**VII.   Plaintiff's Motion for Summary Judgment Should Be Denied**

Plaintiff's motion for summary judgment should be denied for the same reasons that Defendants' motion to dismiss should be granted.  Because he has failed to assert a valid claim within this Court's subject matter jurisdiction or from which the defendants are not immune from suit, Plaintiff is not entitled to summary judgment.  See Fed. R. Civ. P. 56(c) (requiring moving party to demonstrate entitlement to judgment as a matter of law); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss must be granted, and the Complaint should be dismissed with prejudice.

Dated: August 1, 2005.

Respectfully submitted,


/s/
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


/s/
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


/s/
JANE M. LYONS, D.C. BAR # 451737
Assistant United States Attorney
Civil Division
555 4th Street, N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161

24

## <u>CERTIFICATE OF SERVICE</u>

_____I certify that on this 1st day of August, 2005, I served a copy of the foregoing Defendants' Motion to Dismiss and Memorandum of Points and Authorities in Support of Motion to Dismiss by first-class United States mail, postage prepaid, marked for delivery to:

J. Patrick Lyons
P.O. Box 622
Shelbyville, TN 37160

/s/_____
JANE M. LYONS
Assistant United States Attorney